Klinger v. The People.

---

## D. R. KLINGER, IMPLEADED, ETC.,
### v.
## THE PEOPLE.

*Drainage—Formation of Districts—Highway Commissioners—" System of Drainage "—Quo Warranto—Acts of 1879 and 1885—Judgment of Ouster—Costs.*

1. The drainage acts of 1879 and 1885 do not contemplate the formation of districts so large as to require different systems of ditches in order to drain the lands therein embraced.

2. Upon an information in the nature of a *quo warranto* charging that the respondents usurped the office of drainage commissioners, it is *held:* That

no sufficient petition was presented for a district comprising four systems of drainage; that the court below properly entered judgment of ouster and for costs; that all the land in the town was improperly included, as but a small portion thereof would be benefited by the same system of drainage; and that such a district could not be administered under the acts of 1879 and 1885.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Piatt County; the Hon. J. F. HUGHES, Judge, presiding.

Messrs. A. T. PIPHER and S. R. REED, for appellants.

Messrs. CHARLES HUGHES and J. L. RAY, for appellee.

PLEASANTS, J.   This was an information in the nature of a *quo warranto* filed by the State's attorney of Piatt county against Klinger, Vandervort and Wooding, charging, in separate counts, that respondents usurped the office of drainage commissioners of the town of Blue Ridge, of drainage commissioners of drainage district number one, of said town, and of drainage commissioners of, in and for certain pretended drainage districts or systems of drainage which they have designated as drainage systems number one, number two, number three and number four, respectively, and without right or authority have proceeded to lay out, survey, plat and construct ditches therein, and to levy taxes, assessments, etc., therefor.

Respondents filed a plea averring that Blue Ridge was a town in Piatt county; that said county has for years been under township organization; that in 1883 there was presented to the town clerk of said town, with the requisite bond, a petition signed by a majority of adult owners of all the lands in said town, being also owners in the aggregate of more than one-third of all said lands, praying that a drainage district be organized, embracing all the lands in said town, for the purpose in that behalf in the statute mentioned; that due notice thereof was given to the then commissioners of highways of

said town; that they proceeded regularly under the provisions of the Drainage Act, approved May 29, 1879, to organize, and did so organize the district prayed for, as Drainage District Number One, in said town; that no other drainage district has been organized in said town, and that respondents are now the commissioners of highways of said town. The plea set out at great length the several steps and proceedings taken by all concerned in the alleged organization, and the several provisions of the act above referred to; and of that approved June 27, 1885, by which, as they claim, the same were respectively directed or authorized.

A demurrer to the plea, assigning divers causes therefor, was sustained. Respondents Vandervort and Wooding then filed a disclaimer, and declined to defend further, and Klinger abiding by the plea, a judgment was entered of ouster and for costs against Klinger and Vandervort, Wooding having only just succeeded Wheeler (a former co-respondent) as commissioner of highways, and been substituted for him as respondent herein. From that judgment Klinger appealed and brings the record here for review.

On the part of the people it is contended that the plea shows the district therein referred to never had a legal organization, and further, that if it had, the respondents abandoned it, and have undertaken, of their own motion, without any petition, to create four distinct districts, under the name of " systems of drainage."

The plea states that upon the organization of said district the commissioners, in the discharge of their duties, went upon and examined all the lands within it to determine upon a plan of drainage therein, and upon such examination, being aided therein by a competent engineer, found the surface of the land in said district, embracing the whole town, was such as to constitute four distinct water sheds, having different directions for the natural flow of the surface waters thereof respectively; that the highest land was near the center of said district, east and west, but considerably south of the center, north and south, and extended thence northward, from which divide the natural flow of such water was about as follows: from

the east and southeast parts of said district to the south, or east of south into Madden run, from the northeast part to the northeast through a natural depression leading into the Sangamon river, and on the west side of the divide from the northern part to the southwest by way of Trinkle slough into Salt creek, and from the central and southern parts, also to the southwest, into Goose creek; that to provide a complete system of drainage for the district it would be necessary to construct main ditches for outlets, commencing at the divide near the center of the township and leading respectively into Madden run, Sangamon river, Goose creek and Salt creek; that no one continuous line of ditch could be constructed so as to provide efficient means of drainage for the lands embraced in the district as organized; that the commissioners determined upon a plan of work for chief or main outlets for the water of the district which flowed by way of Goose creek and Trinkle slough, and found it would require four main ditches as outlets to four separate areas of low and wet land having divides or swells of higher land between them—two of said areas flowing their water into Goose creek but discharging at different points, and the other two into Trinkle slough— but also at different points.

From these statements in the plea we understand it to be conceded, as it clearly is in the argument, that it is not practicable to connect or combine a system of ditches that would drain the land of the district as organized, or any two of the four water sheds first above mentioned. Each of these will require a system of drainage entirely separate from, and independent of, those of all the others.

The question, then, is whether the statute authorized the organization into one drainage district of lands so related, or rather, so unrelated with respect to drainage. We are of opinion it did not. We understand that the " system of combined drainage " is distinguished by the statute from the system of "individual drainage " which is therein recognized though not specifically so named. An individual proposing to drain his own lands at his own expense may do so, if necessary, through the lands of others, whether the latter are thereby

benefited or not, making just compensation therefor as the law provides. The drain or drains constructed for that purpose will constitute a system no less than in the case of combined drainage, but it will require no district organization. But where there are lands so related that the same system will benefit all of them more or less, and it is proposed to construct it at the expense of all the owners in proportion to the benefits to their respective lands received, they may proceed to accomplish it without resort to condemnation in the mode prescribed. That is the system of combined drainage. The combination referred to is not of ditches, though that will generally be required, but of contribution to the expense of constructing, extending, improving and maintaining them. Here organization is necessary, since numbers of persons have a common, though not necessarily an equal interest. All who are so concerned have a right to be heard, and may favor or oppose the proposition, as each sees fit. If the requisite proportion in number and interest of the owners of such land petition for it, a district is formed which is by the law intended to embrace the lands to be benefited, and no other. Commissioners are provided to plan and execute, the lands are classified according to the relative benefit they receive, and assessments are made upon them in that proportion for the necessary means; and so the work is done and maintained.

Without referring specifically to the provisions of the statute or stating more minutely its practical operation, it must be obvious from this general view of the scheme, that for a good many reasons the district number one, in this case so-called, can not be such as is authorized or contemplated by it. As attempted to be organized it is uncommonly large of its class, embracing about sixty-four sections of land and including an incorporated village which has by law independent powers of its own in respect to drainage, besides much that needs no drainage and will not be drained. The ditch proposed for the northeastern water shed will be about five miles in length. It will not of itself, nor can it by any connection or combination be made to aid in draining an acre of either of the others. On principle, the owners of lands in the southwestern water

shed should have nothing to say about, nor should their lands
be taxed for it.   So of those owning lands in each of those
four water sheds as to all the others.   We think the statute
conforms to this principle, and therefore that the plea shows
no proper or sufficient petition for a district comprising the
whole four, or either of the areas affected by the separate sys-
tems respectively; that all the lands in the town can not be
embraced in one district, because so small a portion of them
would be benefited by the same work or system of works
that the affairs of such a district could not be administered
according to the provisions of the act of 1879, or of that
of 1885.   And hence the proceedings taken for its organ-
ization can not have been validated by the later act.

*Judgment affirmed.*

### D. R. KLINGER, IMPLEADED, ETC. V. THE PEOPLE.

PLEASANTS, J.   This is a companion of case No. 76, on the
docket of this term.   The information here challenges the
authority of appellant and his co-respondents in respect to
their proposed work in the "drainage system number four,"
of district number one, therein mentioned.   For reasons given
in the opinion filed in that case, we hold that the plea shows
none whatever in respondents as drainage commissioners of
any district, or as commissioners of highways or otherwise, for
the work in question.

*Judgment affirmed.*